IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| DAVID LEDSOME, | ) | CASE NO. 5:20-CV-02495-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

**I.    Introduction**

Plaintiff, David Ledsome ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II.   Procedural History**

On October 23, 2017 and October 26, 2017, Claimant filed applications for DIB and SSI, respectively. (ECF No. 11, PageID #: 384, 386). Claimant alleged a disability onset date of

1

November 1, 2008.[1] (ECF No. 11, PageID #: 384, 386). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 11, PageID #: 305). On February 14, 2020, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 11, PageID #: 155). On February 27, 2020, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 86). The ALJ's decision became final on September 23, 2020, when the Appeals Council declined further review. (ECF No. 11, PageID #: 79).

On November 4, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 13). Claimant asserts the following assignment of error:

> The administrative law judge's decision is not supported by substantial evidence because his analysis of Listing 11.13 is not supported by substantial evidence and he improperly rejects the treating physician's opinion.

(ECF No. 12 at 9).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant says his condition has worsened since 2012. (Testimony) The claimant alleges disability due to alleged marked limitations in physical functioning, including impaired limb strength and gait difficulties. (Hearing Record) He alleges frequent falls, muscle weakness, pain in the feet and issues in the fingers. (Hearing Record, C3E, 1) He also argues that his concentration, persistence and pace is limited which would result in mental limitations that

---

[1] Claimant previously filed for DIB and SSI on June 28, 2013, alleging a disability onset date of November 26, 2012. (ECF No. 11, PageID #: 89). Because Claimant provided new evidence that showed a material change in circumstances beginning October 29, 2015, the ALJ concluded that he did not have to adopt the previous ALJ's findings under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). (ECF No. 11, PageID #: 89–90).

> would preclude sedentary work. (Hearing Record)

(ECF No. 11, PageID #: 97).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's relevant health records and symptoms:

> The claimant has a diagnosis of muscular dystrophy/myotonic dystrophy type 2 and proximal myotonic myopathy (PROMM). (C3F, 6) The diagnosis has been repeatedly noted to be a mild muscular dystrophy, as seen on referenced EMG findings. (C8F, 7, 9, C7F, 104, C6, 3, C2F, 27) The claimant also has been diagnosed with diabetes and diabetic peripheral neuropathy. (C3F, 4, 6) The claimant frequent[ly] reports pain and gait difficulty due to the muscular dystrophy, but his physicians note that it is more related to the diabetes and neuropathy than to the muscular dystrophy. (C3F, 4, 1) In the same encounter in 2016 it was noted that the claimant showed significant functional weakness, however it was further noted that there was poor effort and that his strength was likely no worse tha[n] 4 anywhere. (C3F, 1, 3) It was further noted that the claimant's pain issues were bothering him more than the average patient with myotonic dystrophy. (C3F, 9) The continued pain and discomfort is consistent throughout the record, as well as physicians' notes that the continued uncontrolled nature of his diabetes is due to poor compliance with prescribed medical treatment. In April of 2017, the claimant reported not following his diet and rarely checking his blood sugars, but being independent with his activities of daily living with the exception of foot pain, and that in general his health was good. (C6F, 25) During the examination at that encounter, he was noted to use a cane, have decreased sensation in his feet. (C6F, 26) In December of 2017, the claimant's physician noted that the claimant was a very exasperating gentleman who came in very poorly compliant after having stopped his diabetic medication and reporting he subsequently felt badly. (C6F, 15)
>
> The claimant in May of 2018 was noted to have no edema, normal gait with the use of an assistive device and to have some decreased strength and tone in his upper extremities, but with intact light touch in his left and right hands. (C6F, 5) The claimant was again noted in June of 2018 to be noncompliant in his treatment recommendations as he had yet to consult with an endocrinologist despite his providers "numerous pleas." (C7F, 98) The poor compliance with treatment continued into January 2019 as the claimant reported he was not faithful to his diet or compliant with his medications. (C8F, 2) The

> claimant was seen in May of 2019 and reported not checking his blood sugars, and complained of numbness in his toes. (C15F, 5) Notably, he reported having a blood sugar low in the summer of 2018 when he was camping. (C15F, 5) He was treated in March 2019 for a diabetic foot ulcer. (C10F, 8) A June 2019 appointment noted intact sensation in his right and foot, normal strength and muscle tone in his upper and lower extremities. (C10F, 7) In November of 2019, the claimant reported he was not checking his blood sugar, not exercising, and had eaten cookies that day. (C15F, 1) On the examination, the claimant had tremors versus shakes in his lower extremities and no significant edema, he was advised to exercise as tolerated. (C15F, 2, 3) A January 2020 appointment noted that the claimant developed a diabetic ulcer in June of 2019, (C10F, 6) and he had been given care recommendations which he did not follow. (C10F, 3) He was noted to have normal gait, to have tenderness on the bottom of his feet, but to have light touch intact and normal muscle tone and strength in his upper and lower extremities. (C10F, 4)
>
> I have given consideration to Social Security Ruling 19-2pp, which instructs adjudicators to consider the effects of obesity not only under the Listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. . . . The claimant is five feet, eight inches tall and weighs 205 pounds, with a BMI of 29.41. (C15F, 2) Although no direct medical evidence indicates that the existence of this impairment causes the claimant excess fatigue, or unduly restricts h[is] ability to move about freely within the workplace, this impairment was nevertheless identified as severe for its contributory effects, potentially marked, on the claimant's other severe impairments.
>
> Turning to the claimant's mental health impairments, the claimant has been diagnosed with major depressive disorder and generalized anxiety disorder. (C4F, 3) The claimant has reported [h]is concentration is not good and he has a short attention span. (C3E, 6) . . . The record contains only one encounter with a mental health provider who discharged the claimant after not returning. (C4F, 1) . . . The claimant had no evidence of hallucinations, delusions, obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues. (C5F, 3).

(ECF No. 11, PageID #: 97–99).

    **C.**       **Opinion Evidence at Issue**

On January 22, 2020, Adam Quick, M.D., filled out a physical residual functional capacity report. (ECF No. 11, PageID #: 810–12). Dr. Quick indicated that he last saw Claimant in August of 2017. (ECF No. 11, PageID #: 810). He noted that Claimant had type 2 myotonic dystrophy and his prognosis was poor. (ECF No. 11, PageID #: 810). He opined that Claimant could walk 1 block, sit 2 hours before needing to stand, and stand 5 minutes before needing to walk or sit. (ECF No. 11, PageID #: 810). In total, Dr. Quick stated that Claimant could stand less than 2 hours and sit 6 hours of an 8-hour workday. (ECF No. 11, PageID #: 810). He stated that he was not sure, but Claimant would probably need a job that permits shifting positions at will. (ECF No. 11, PageID #: 810). He also concluded that Claimant would need to take breaks and would be absent from work 7–10 days a month. (ECF No. 11, PageID #: 810–811). Dr. Quick was not sure if Claimant would need a cane or other assistive device. (ECF No. 11, PageID #: 810). He also opined that Claimant's pain would frequently interfere with the attention and concentration needed to perform even simple tasks. (ECF No. 11, PageID #: 810).

The ALJ did not discuss Dr. Quick's opinion but stated:

> I do not find the opinions of Adam Quick, MD (C12F), to be persuasive because although he is an acceptable medical source whom had the opportunity to examine the claimant, it has been two and a half years since he was last seen by the provider, and his opinion is not consistent with or supported by the evidence of record.

(ECF No. 11, PageID #: 101).

**IV.   The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: muscular dystrophy/myotonic dystrophy type 2 and proximal myotonic myopathy (PROMM), chronic obstructive pulmonary disease (COPD) and asthma, Type 2 diabetes mellitus with diabetic neuropathy, nephropathy, hyperglycemia and diabetic foot ulcer,

5

> obesity, depressive disorder and anxiety disorder. (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can no more than occasionally operate foot controls with the bilateral lower extremities. He can frequently push, pull and operate hand controls with the bilateral upper extremities. He would use a cane when ambulating. The claimant can never climb ladders, ropes or scaffolds or crawl. He can occasionally climb ramps or stairs, balance, stoop, kneel and crouch. The claimant can frequently reach, handle and finger with the bilateral upper extremities. The claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, vibrations and pulmonary irritants such as fumes, dusts, gases, odors and poor ventilation. The claimant should avoid all exposure to hazards such as unprotected heights, moving mechanical parts and the operation of motor vehicles. The claimant can perform both simple and complex tasks, but cannot perform tasks at a high production rate pace, such as assembly line work. The claimant can have occasional change in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation. The claimant would require a sit/stand option, defined as the ability to stand for 1 minute after 45 minutes of sitting.

(ECF No. 11, PageID #: 92, 94, 96–97).

V. **Law & Analysis**

　A. **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.     Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

7

(6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises one issue on appeal. Within this issue there are two arguments. First, Claimant argues that the ALJ's conclusion that Claimant did not meet Listing 11.13—muscular dystrophy—was not supported by substantial evidence. Second, Claimant asserts that the ALJ improperly rejected Claimant's treating physician's medical opinion.

### 1. The ALJ's Conclusion that Claimant did not meet Listing 11.13 is Supported by Substantial Evidence

Claimant argues that the ALJ's conclusion that Claimant does not meet the criteria for the Listing for muscular dystrophy was not supported by substantial evidence. As noted above, a Claimant has the burden of demonstrating that his impairment meets or equals a listed impairment. The ALJ's decision regarding whether a claimant met the requirements of a Listing will be affirmed if supported by substantial evidence. *See Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001) (affirming the ALJ's finding that the claimant did not meet the relevant listing where his decision was supported by substantial evidence). Claimant argues that he meets the B criteria for Listing 11.13. Listing 11.13B requires:

> A marked limitation in physical functioning, and in one of the following:
>
> 1. Understanding, remembering, or applying information; or
> 2. Interacting with others; or
> 3. Concentrating, persisting, or maintaining pace; or
> 4. Adapting or managing oneself

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.13 (internal citations omitted). A marked limitation in physical functioning "means that, due to the signs and symptoms of your neurological disorder,

you are seriously limited in the ability to independently initiate, sustain, and complete work-related activities." *Id.* § 11.00(G)(2)(a). A marked limitation in mental functioning "means that, due to signs and symptoms of your neurological disorder, you are seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings." *Id.* § 11.00(G)(2)(b).

Claimant asserts he has a marked limitation in physical functioning due to muscle weakness, slow gait, poor balance, and frequent falls. He also suggests that that he has a marked limitation in concentrating, persisting, and maintaining pace. The ALJ considered the Listing criteria but concluded that Claimant had neither a marked limitation in physical functioning nor a marked limitation in one of the mental areas of functioning. (ECF No. 11, PageID #: 95). While the ALJ did not explain his physical functioning conclusion in detail, he did explain why Claimant did not have a marked limitation in a mental area of functioning when discussing various mental impairments. Regarding concentrating, persisting, and maintaining pace, the ALJ stated Claimant has only a moderate limitation. (ECF No. 11, PageID #: 96). The ALJ explained that, on examination, Claimant was noted to have "grossly intact, or adequate attention span and concentration, but perhaps at low average." (ECF No. 11, PageID #: 96). This is substantial evidence to support the ALJ's conclusion that Claimant did not have a marked limitation in concentrating, persisting, and maintaining pace. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(G)(3)(b)(iii) ("This area of mental functioning refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate.").

Claimant, however, spends most of his argument discussing his marked limitation in physical functioning. Regarding the mental areas of functioning, Claimant simply states that "Dr. Quick noted Plaintiff's attention and concentration are frequently affected, even for simple tasks."

9

(ECF No. 12 at 12). The fact that Claimant points to some evidence that supports his argument is not sufficient to require remand. *See Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [Claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion."). As noted above, the ALJ's mental functioning determination was supported by substantial evidence. Claimant does not argue that he had a marked limitation in any other area of mental functioning. Without a marked limitation in an area of mental functioning, Claimant does not meet Listing 11.13's B criteria even if he has a marked limitation in physical functioning. Thus, Claimant's first argument is without merit.[2]

### 2. The ALJ Erred in His Analysis of Dr. Quick's Medical Opinion

Claimant additionally argues that the ALJ's evaluation of Dr. Quick's medical opinion was not supported by substantial evidence. In part, Claimant argues that the ALJ was required to give "good reasons" for failing to defer to Dr. Quick's—Claimant's treating source—medical opinion.[3] However, the "treating source" rule is no longer applicable. On January 18, 2017, the Social

---

[2] In introducing his argument, Claimant states "his impairments meet, or at least medical[ly] equal in severity Listing 11.13." (ECF No. 12 at 9). Other than this conclusory statement, Claimant says nothing about medically equaling the Listing. To equal a listing, a claimant must demonstrate that, despite not having all the findings required by the listing, he has other findings related to his impairment that are at least of equal medical significance to the required criteria. *See* 20 C.F.R. § 404.1526(b). Because Claimant does not develop this argument, it is deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 996–97 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (alterations in original) (citations omitted)).

[3] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." C.F.R. § 404.1520c(a).

Nevertheless, Claimant is correct that an ALJ must "articulate how he considered the medical opinions" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c), including: supportability, consistency, the source's relationship with the claimant, the source's specialized area of practice, if any, and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2).

Dr. Quick filled out a physical residual functional capacity report on January 22, 2020, noting that he last saw Claimant in August of 2017. (ECF No. 11, PageID #: 812–14). In relevant part, Dr. Quick opined that Claimant could rarely reach, push, and pull and Claimant could occasionally handle. He indicated that, as a result of Claimant's impairments, Claimant would be absent 7–10 days per month. Adopting any one of these limitations, according to the vocational expert, would have been work preclusive. (ECF No. 11, PageID #: 184–91). The ALJ did not discuss Dr. Quick's assessment but explained:

> I do not find the opinions of Adam Quick, MD (C12F), to be persuasive because although he is an acceptable medical source whom had the opportunity to examine the claimant, it has been two and a half years since he was last seen by the provider, and his opinion is not consistent with or supported by the evidence of record.

11

(ECF No. 11, PageID #: 101).

Claimant asserts that this analysis was error because: 1) the ALJ did not discuss the relevant factors as required by 20 C.F.R. 1520c; and 2) the opinion form specifically asked Dr. Quick to render an opinion about Claimant's functioning as of September 2017. (ECF No. 12 at 13). The Commissioner responds that the ALJ properly evaluated the medical opinion because: 1) the ALJ "explicitly discussed supportability and consistency"—the two most important factors; and 2) Dr. Quick's opinion was rendered more than two and half years after Claimant's last visit. (ECF No. 13 at 13–15).

As for the first argument, the Commissioner lists various reasons that Dr. Quick's opinion was not supported, such as the fact that Dr. Quick noted that he was "not sure" about certain aspects of Claimant's limitations and the opinion was not supported by any clinical observations or objective measures. The Commissioner similarly attempts to provide reasons the opinion was inconsistent with the medical record, stating that other medical sources noted Claimant's muscular dystrophy to be mild. The Commissioner states the "Court is left to wonder how exactly Dr. Quick arrived at his conclusions." (ECF No. 13 at 16). However, something similar can be said about the ALJ's conclusions. While the Commissioner attempts to supply reasons explaining why Dr. Quick's opinion was inconsistent and not supported, the ALJ did not list one himself. He simply gave conclusory statements.

The Commissioner's post hoc rationalization does not save the ALJ's deficiencies. "The regulations do not call for the reviewing court or the Commissioner to comb through the record after the ALJ has rendered [his] decision and 'imagine manifold ways in which the factors could have been applied to the evidence that was presented.'" *Miles v. Comm'r of Soc. Sec.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (citing *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL

3702170, at *6 (E.D. Mich. Aug. 13, 2021)). "Instead, it is the obligation of the ALJ 'in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Id.* (citations omitted). While the Court recognizes that it can consider the ALJ's opinion as a whole when determining whether his factual findings were supported by substantial evidence, "substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d. 399, 410 (6th Cir. 2009)).

Moreover, upon the Court's own review of the entire opinion, the Court finds no explanation for rejecting Dr. Quick's findings. The ALJ acknowledged evidence of both decreased strength and tone in Claimant's upper extremities and normal findings, but did not explain why he valued one set of evidence over the other. While the new regulations are plainly "less demanding than the former rules governing evaluation of medical source opinions . . . 'they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Id.* at *4 (citations omitted). The ALJ did not provide such an explanation. This failure requires remand because, "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021); *see also King v. Kijakazi*, No. 1:20-cv-196-TAV-HBG, 2021 WL 3520695, at *7–8 (E.D. Tenn. July 21, 2021) (remanding the case where the ALJ simply stated that one opinion was more supported by and consistent with the medical record than the other without providing any analysis or rationale).

Notably, the ALJ's statement about the timing of Dr. Quick's opinion does not save his analysis. Dr. Quick filled out his opinion form on January 22, 2020. He last saw Claimant in

13

August 2017. The Commissioner states that the "gap in treatment inherently raises questions about the accuracy and applicability of the limitations assessed." (ECF No. 13 at 15). The Commissioner states that it is not clear whether the limitations were present before September 2017, or if Dr. Quick was only referring to limitations in 2020. However, the form Dr. Quick filled out specifically stated that Claimant needed to establish that he became disabled prior to September 30, 2017. (ECF No. 11, PageID #: 810). If the restrictions Dr. Quick gave in 2020 differed from what they would have been prior to September 30, 2017, the form instructed Dr. Quick to indicate how they differed. (ECF No. 11, PageID #: 810). Dr. Quick did not state that the restrictions would have been different. In fact, considering Dr. Quick had not seen Claimant since before September 2017, Dr. Quick had to have based his opinion on Claimant's last visit with him. Nevertheless, even if the Commissioner's argument was accurate, it would not save the ALJ's analysis because he was required to articulate the supportability and consistency of the opinion. Because the ALJ did not follow the regulations and only gave conclusory statements, the ALJ did not provide the Court with a logical bridge to understand his conclusions. Accordingly, the ALJ erred in his analysis of Dr. Quick's opinion.

**VI.     Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: December 8, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).